People ex rel. Ava L. Parrott and Herman C. Boehme, Relators, *v.* Henry R. M. Cook, as Auditor of the Board of Education of the City of New York, Respondent.

(Supreme Court, New York Special Term, June, 1917.)

Greater New York Charter, § 1092 — teachers' retirement fund — power of board of education of city of New York —schools.

Nothing in section 1092 of the Greater New York Charter, which governs the creation and maintenance of the teachers' retirement fund, puts it beyond the power of the board of education to direct that moneys deducted from the salary of a teacher because of absence and credited to said fund shall be withdrawn, when later, for sufficient reasons, such absence was excused by said board of education.

Motion for a peremptory writ of mandamus.

Louis S. Posner, for relators.

Lamar Hardy, corporation counsel (Charles McIntyre, of counsel), for respondent.

Erlanger, J.   The question of law presented in this proceeding concerns the power of the board of education to direct the withdrawal from the teachers' retirement fund of moneys paid into that fund and deducted from the salary of a teacher, because of absence, where the absence was afterward excused by the board upon sufficient reasons.   That the absence of a teacher may be excused, with pay, is not open to question (Greater N. Y. Charter, § 1088, subd. d), but it is contended by the relator that the statute governing the creation and maintenance of the retirement fund (Id. § 1092; Laws of 1901, chap. 466, amd. by Laws of 1905, chap. 661, and Laws of 1914, chap. 476) places it beyond

the authority of the board of education to direct that the pay so deducted and credited to the fund shall be withdrawn for any purpose other than for payments therein expressly defined, which do not include refunds of this character. So far as material to the question, the statute, when enumerating the sources of the retirement fund (Charter, § 1092), provides as follows: "All money, pay, compensation or salary, or any income thereof forfeited, deducted, reserved, or withheld for any cause from any member or members of the teaching or supervising staff of the public day schools of the city of New York or of the normal college and training department of the normal college of the city of New York, or of schools or classes maintained in institutions controlled by the department of public charities or by the department of correction, in pursuance of rules established  *  *  * by the board of education, or by the board of trustees of the normal college of the city of New York, or by the commissioner of public charities, or by the commissioner of correction for schools or classes maintained by such commissioners respectively. The auditor of the board of education, the auditor of the board of trustees of the normal college, the commissioner of public charities, and the commissioner of correction shall certify monthly to the comptroller the amounts so forfeited, deducted, reserved or withheld during the preceding month. Said amounts shall be turned into the said retirement fund."

Upon a strict construction of this statute, the appropriation to the retirement fund of moneys " forfeited, deducted, reserved or withheld " from the pay of teachers " for any cause," would appear to include as part of the fund moneys deducted or reserved from pay for excusable absences, and thus to exclude the power to withdraw those moneys, when once appropriated,

although the absence was actually excused, with pay. Such a method of providing accretions to the fund, however, would involve the requirement that the municipality make double payment for the same services, since, when the absence was later excused, with pay, the teacher would be entitled to the equivalent of the sum thus paid into the retirement fund, and recourse would necessarily be had to the general school fund for the purpose. Charter, § 1060.

To adopt the construction of the statute contended for by the relators, therefore, it must be assumed that the legislature intended to provide, so far, for the increase of this retirement fund through the application of moneys raised by taxation, the amount to be measured, in form, by the time during which certain teachers were absent, although the accident of these absences would have no relation to the pension system, nor would the moneys so applied be derived, in fact, from the pay of the absent teachers. Such does not appear to be the theory upon which the pension system was devised. The statute provides for four actual sources of the fund; voluntary contributions, a percentage of excise moneys received by the city of New York from licenses for the sale of liquor, the deduction of a stated percentage from all salaries of teachers and the amounts "forfeited, deducted, reserved or withheld" from salaries. Support for the fund from sources other than moneys raised by general taxation is thus distinctly planned and, in harmony with the purpose of the statute, it appears to me that the phrase last quoted must be given its usual and colloquial meaning. Pay which has been in form stopped and then in fact released to the employee is not "forfeited," nor is it money deducted, reserved or withheld from the salary or from the employee. The words "for any cause," must be read with the qualifying

clause of this same sentence of the statute "in pursuance of rules established or to be established by the board of education." Under this construction, the by-law adopted by the board of education (§ 37, ¶ 4), whereby the salaries withheld from any teacher "and not remitted to such teacher" became part of the retirement fund, is in harmony with the statute and valid.

An examination of the successive enactments of this teachers' pension law discloses a very clear recognition of the power to withdraw from the fund any sums thus withheld for absences when later excused. Under the provisions of chapter 466 of the Laws of 1901, the board of education was directed to limit the "excuse of absence of teachers, with pay," in such manner as to assure the sufficiency of the fund. By chapter 661 of the Laws of 1905, a provision was added whereby a minimum permanent fund of $800,000 was established as of December 31, 1904, the provisions being as follows: "The moneys standing to the credit of the retirement fund on the thirty-first day of December, nineteen hundred and four, after subtracting therefrom any amounts forfeited, deducted, reserved or withheld from salaries for absences prior to that date, which may, on excuse of absence, be refunded after that date, all excise moneys of nineteen hundred and four which may have been credited to said fund on or before that date, and all interest for nineteen hundred and four on said fund, which may have been credited to said fund on or before said date, shall be set apart by the comptroller as a permanent fund. The unexpended balances of the income of the teachers' retirement fund for the year nineteen hundred and five, and for all subsequent years, shall be added to the said permanent fund. The comptroller shall invest the said permanent fund, and the income thereof may

be used for the payment of annuities, but if necessary, in order to carry out the provisions of this act, the board of education may use any portion of the permanent fund in excess of eight hundred thousand dollars in the same manner as the income thereof.''

Here was direct recognition of the propriety of a withdrawal of moneys '' forfeited, deducted, reserved or withheld for absences prior to that date, which may, on excuse of absence, be refunded after that date.'' Legislative construction of the meaning to be given the words '' forfeited, deducted, reserved or withheld '' is thus afforded, in harmony with their colloquial meaning, which, as I have pointed out, would exclude from the fund moneys subject to refund within the discretion of the board of education. Since the power to excuse absences, with pay, has been consistently retained in the statute, the same construction of these words is to be accepted for the purposes of this proceeding. There is no expression of a contrary meaning, and it is not necessary to look for words affirmatively continuing a construction of the phrase which the legislature has adopted in relation to the same subject. No limitation upon the power to refund, for excuse of absence, where the moneys have been withheld after December 31, 1904, is indicated. The permanent fund referred to was to be made up as of that date, not as of some future time, and the expression of the power to withdraw or deduct pay then credited to the fund but subject to refund was in no sense an exclusion of a similar exercise of power in the future. I conclude, therefore, that the withdrawals of moneys from the fund, now assailed by the relators, were within the authority of the board of education to direct, and that the application for a peremptory writ of mandamus should be denied.

Application denied.